**Brenda PANNELL, Plaintiff,**

v.

**The FUTURE NOW, Defendant.**

**No. 93–2961–M1.**

United States District Court,
W.D. Tennessee,
Western Division.

Feb. 2, 1995.

Dan M. Norwood, Memphis, TN, for plaintiff.

J. Gregory Addison and Louis P. Britt, Memphis, TN, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

McCALLA, District Judge.

### PREFACE

Pursuant to Rule 16(d) a pretrial conference was held in this case on Monday, January 23, 1995 at 8:30 a.m. Present for the plaintiff was Dan M. Norwood, Esq. Present for the defendant were J. Gregory Addison, Esq. and Louis P. Britt, Esq.

Motions pending before the Court at the time of the conference included the defendant's motion for summary judgment filed on November 29, 1994. The defendant asserts that the plaintiff has failed to adduce the requisite elements of a prima facie case of retaliatory discharge under Tennessee Code Annotated § 50-1-304 and that, therefore, there is no genuine issue of material fact and that summary judgment should be granted for the defendant as a matter of law. Defen-

dant relies primarily on two (2) Tennessee Court of Appeals cases, both written by Judge Highers. *Merryman v. Central Parking System, Inc.*, 8 IER Cases 526, 1992 WL 330404 (W.S.Tenn. Nov. 13, 1992); *Leeman v. Edwards*, 1994 W.L. 560889 (W.S.Tenn. Oct. 14, 1994). It appears that a large number of facts in this case are not in dispute. Plaintiff asserts, however, that summary judgment should not be granted because of the "temporal proximity of the discharge [of the plaintiff] to the protected activity [whistleblowing regarding alleged illegal or fraudulent business activities by Don Sowell, defendant's store manager]".[1]

Portions of the depositions of Brenda Pannell, Jarrell L. Pannell, and Donnie Sowell have been filed in connection with the pending motion for summary judgment.

The legal theories of the parties, the record, and the applicable case law were discussed by the Court and counsel at the 16(d) conference. At the end of the conference, the Court found that the defendant's motion for summary judgment should be granted. The Court relies on both the statements of counsel at the conference and the facts as established in the deposition portions on file with the court to establish that there is no dispute as to any material fact in this case. This memorandum will briefly recap the Court's decision in this case.

### BACKGROUND AND PLAINTIFF'S COMPLAINT

This case was removed to Federal District Court pursuant to 28 U.S.C. § 1441(a). This is an action brought pursuant to Tennessee Code Annotated § 50-1-304 for alleged retaliation against the plaintiff by the defendant based on her asserted refusal to participate in or remain silent about alleged illegal activities. Specifically, it is alleged that Ms. Pannell, while an employee at The Future Now, Inc., a computer store, was asked by the store manager, Donnie Sowell, to assist his

---

1. The "whistleblowing activities are alleged to have occurred on August 7, 1992 (write-up of "fraudulent" customer order and conversation between Pannell and Donnie Sowell), September 3, 1992 (Pannell one hour meeting with Lewie Miller, Executive Vice President of The Future

Now, Inc.), and September 8, 1992 (Pannell call to Miller and follow-up letter). Pannell was terminated on September 25, 1992 immediately after an admitted verbal altercation with another employee, Janet Brasch.

brother in obtaining certain price information relative to a computer. Ms. Pannell, working with Mr. Sowell's brother, prepared a purchase order in connection with an IBM clone computer.[2] As Mr. Sowell's brother was leaving the store, he informed Ms. Pannell that he was not purchasing the computer but was going to use the purchase order in connection with an insurance claim concerning a water damaged computer that he owned. According to Ms. Pannell, Mr. Sowell discussed his brother's activities with her immediately after his brother left the store, stating "I could be fired for this, couldn't I." Pannell Deposition at 50 11.11–12. Ms. Pannell believed that these activities could constitute some type of insurance fraud. Ms. Pannell asserts that she advised a corporate vice president (Lewie Miller) of this information, approximately four (4) weeks later (on September 3 and 8, 1992) and that she was terminated by Mr. Sowell, her store manager, on September 25, 1992.

In accordance with Local Rule 11(d) defendant has submitted Defendant's Statement of Undisputed Material Facts in Support of his Motion for Summary Judgment (filed November 29, 1994). An opponent to a motion for summary judgment who disputes "any of the material facts upon which the proponent has relied ... shall respond to the proponent's numbered designations, using the corresponding serial numbering." Local Rule 11(d)(3). Examination of plaintiff's response coupled with discussion with plaintiff's counsel during the Rule 16(d) conference, reveals that there is no dispute as to material fact. See Local Rule 11(d)(3).

### THE FACTS

According to the plaintiff in this case, on August 7, 1992 Mr. Sowell's brother, Randy, came to the defendant's offices in connection with the possible purchase of a computer. Donnie Sowell asked Ms. Pannell to meet with his brother and set him up with a computer. It is conceded that this was not unusual. Ms. Pannell met with Randy Sowell and prepared a customer order dated that same date in the amount of $893.06. Deposition Exhibit 1, deposition of Brenda Pannell (June 9, 1994). As Randy Sowell was leaving the store, Ms. Pannell indicated that her suspicions were raised when he stated that he was not going to purchase the computer, but just needed the invoice for insurance purposes. According to Ms. Pannell, Donnie Sowell then came into her office, closed the door, and stated to Ms. Pannell that he could lose his job for this and that she should cover up this apparent fraud.

Approximately four (4) weeks later (on September 3, 1992), Lewie Miller, defendant's Executive Vice President, was present in the Memphis store and met with Ms. Pannell. The meeting lasted approximately one (1) hour and Pannell and Miller discussed a number of topics as reflected in undisputed facts set out in defendant's Rule 11(d) statement. See Undisputed Facts 28, 29, 30 (Defendant's Statement of Undisputed Material Facts in Support of his Motion for Summary Judgment, filed November 29, 1994). Mr. Miller then met with Donnie Sowell, the store manager. There is no proof that Mr. Miller told Donnie Sowell that plaintiff had informed him of the alleged insurance fraud incident. Moreover, it is admitted that the plaintiff does not have any information that Mr. Miller ever told Donnie Sowell that Ms. Pannell discussed the alleged insurance fraud incident with him. See Undisputed Fact 35, id.; also see Statement of Plaintiff's counsel during Rule 16(d) conference. It is admitted that Donnie Sowell never mentioned the sales order incident (alleged insurance fraud incident) to Ms. Pannell at any time after August 7, 1992. See Pannell Deposition at 106 11. 17–19; at 89. There is no dispute that Ms. Pannell and Mr. Donnie Sowell had a poor working relationship.[3]

---

**2.** Ms. Pannell admits that no invoice was prepared in connection with the purchase order. Pannell Deposition at 55 1.22 (June 9, 1994).

**3.** Donnie Sowell was described by Ms. Pannell as a "cruel" manager who treated her in a conde-

scending way. Pannell Deposition at 35. Ms. Pannell had complained to others regarding her problems with Donnie Sowell over a period of time. See e.g. Pannell Deposition at 38–40.

On September 9, 1992 Ms. Pannell wrote a letter to Mr. Miller to confirm her conversations with him concerning the complaint regarding possible insurance fraud as to Donnie Sowell. Deposition Exhibit 3, Pannell deposition (June 9, 1994).

That letter, addressed to Lewie Miller, Executive Vice President for The Future Now, Inc. in Cincinnati, Ohio, reads as follows:

Dear Lewie:

This letter is to reiterate our meeting made on Thursday, September 3, 1992 at 4:30 p.m. and our phone conversation on Tuesday, September 8, 1992 at approximately 2:00 p.m.

Our meeting was of an important matter regarding my concerns over management tactics and personnel procedures employed at your Memphis branch. As we discussed, the tactics of management by intimidation resumed almost immediately after your departure on September 4th. The unethical personnel procedures and the blatant disregard of policy and procedure should not be allowed to continue in Memphis or any other branch of The Future Now.

Also, I had brought to your attention a customer order involving possible fraud. I want to further state that I had no knowledge of the document being used for any other purpose than an actual purchase from the company. I did not appreciate being solicited to write the order whereas I could be presumed as an accessory. I hope this matter can be resolved without delay and I trust you understand why I felt it necessary to bring this matter to your attention.

Please feel free to contact me at your convenience regarding any or all of the issues that we discussed.

(Signed)

Brenda J. Pannell

Deposition Exhibit 3, Pannell deposition (June 9, 1994).

It is admitted that several weeks later the plaintiff was engaged in a heated argument in the office with another employee, an employee alleged by the defendant to be plaintiff's immediate supervisor. Pannell Deposition at 95–100 (June 9, 1994). Ms. Pannell testified specifically regarding her conflict with Janet Brasch on September 25, 1992. Ms. Pannell's testimony regarding the incident with Ms. Brasch included the following:

Q. This says, and I am reading what you told me in your writing "Janet and I both went off on each other."

A. Right.

Q. Okay. Tell me what you mean.

A. Just fussing, kind of like, you know, she was yelling me at me about why didn't I do the Dobbs billing and stuff, and I was trying to explain to her that was there when I left to go to the dentist yesterday. That it was put there evidently that morning or that night because I left around two or three. I'm not real sure.

And Janet was real headstrong about having the administrative manager's position. She wanted to do good. She's even willing to come testify for me. She said she would. And I guess she was having a bad PMS day, I don't know. And she was yelling and screaming and cussing at me, and I was yelling back at her and saying don't do this to me. And of course a lot of people heard it, and Donnie took her outside.

Q. And so it was pretty loud?

A. Yeah.

Pannell Deposition at 96 line 21 to 97 line 20.

The conflict between Ms. Pannell and Ms. Brasch occurred in an open area in the office, could be heard by others, and, according to Ms. Pannell, was like "two (2) women hen scratching and stuff." Pannell Deposition at 98 11. 8–9. Immediately after the incident with Ms. Brasch, Ms. Pannell was terminated by Donnie Sowell for insulting Ms. Brasch. *See* Deposition Exhibit 4, Pannell Deposition.

### APPLICATION OF THE LAW TO THE FACTS

In *Leeman v. Edwards*, 1994 W.L. 560889 (October 14, 1994), Judge Highers of the Tennessee Court of Appeals set out the four (4) elements required in order for an individ-

ual to establish a claim under T.C.A. § 50–1–304. Judge Highers specifically observed

> According to *Merryman v. Central Parking System, Inc.* [citation deleted], T.C.A. § 50–1–304 requires the Plaintiff to establish (1) plaintiff's status as an employee of the defendant, (2) the plaintiff's refusal to participate in, or to remain silent about, illegal activities, (3) the employer's discharge of the employee, and (4) *an exclusive causal relationship between* the *plaintiff's refusal to* participate in or to remain silent about illegal activities *and* the *employer's termination* of the employee.

*Leeman v. Edwards,* 1994 W.L. 560889 (p. 2) (W.S.Tenn. Oct. 14, 1994) (emphasis supplied)

There is no dispute in the instant case that Ms. Pannell was an employee of the defendant and that she was discharged by the defendant on September 25, 1992. Defendant specifically denies however, that Ms. Pannell was "discharged or terminated solely for refusing in participating in, or for refusing to remain silent about, illegal activities." T.C.A. § 50–1–304(a). In the instant case, the plaintiff has failed to produce any evidence to support her allegation that her termination was based "solely" upon her refusal to participate in or remain silent about the incident of alleged insurance fraud. Plaintiff's own testimony shows that she had only one (1) discussion with Donnie Sowell regarding the customer order prepared for Randy Sowell on August 7, 1992. That discussion, according to Ms. Pannell occurred immediately after Randy Sowell left the store. Pannell describes that conversation as follows:

> He closed my door, and he said, I can't believe I did this. He goes, I could lose my job for this and it's not worth it. And I just looked at him and I said, no, it's not. I said, well, what do I do with it? He didn't care, get rid of it.
>
> Q. What did you take that to mean?
> A. He didn't want me to turn it in to order entry. He knew what was going on all the time, but he never told me, you know.

Pannell Deposition at 56 11. 2–11.

While plaintiff wrote Mr. Miller, Executive Vice President of the defendant regarding her discussions with him on September 3 and 8, 1992 (*See* Deposition Exhibit 3, Pannell Deposition), Ms. Pannell admitted that she has no information that Donnie Sowell was aware of her communications to Mr. Miller regarding the allegation of possible insurance fraud. Donnie Sowell, on the other hand, testified that Mr. Miller did not discuss with him Ms. Pannell's allegations of insurance fraud. Deposition of Donnie Sowell at p. 16 (Oct. 25, 1994). Specifically, Mr. Sowell testified as follows

> Q. Did y'all [you and Mr. Miller] discuss Ms. Pannell's allegations that you were involved or that you or your brother were involved in insurance fraud?
> A. No.
> Q. So that topic was never brought up?
> A. No.

Deposition of Donnie Sowell at 16 11. 5–10 (Oct. 25, 1994).

It is admitted that on September 25, 1992 Ms. Pannell was involved in a loud dispute with Ms. Brasch (Pannell Deposition at 95–100) and that was Ms. Pannell was terminated immediately thereafter. The records reflect that Ms. Pannell was terminated for insulting Ms. Brasch. Deposition Exhibit 4 (Pannell Deposition).

In a whistleblowing case, it is critical that the discharging individual have knowledge of the plaintiff's "whistleblowing." Obviously, without knowledge of a plaintiff's whistleblowing or intention to whistleblow, there can be no retaliation for whistleblowing activity. *See Merryman v. Central Parking System, Inc.,* 8 IER Cases at 529. In *Merryman,* the Court of Appeals, in sustaining the lower court's grant of summary judgment, found that it was insufficient that the plaintiff, a co-pilot (Merryman), had complained to his pilot (Williams) regarding Williams' unsafe flying practices. As Judge Highers noted in *Merryman:*

> the refusal to remain silent, contemplates some action greater than Merryman took in this case. The record shows that the discussion was private in nature, it did not involve company management [other than Merryman's immediate superior, Williams], and it did not extend to any

agency concerned with public safety, and the plaintiff was not requested to participate in or to remain silent about any illegal activities of its employer. These facts do not support an action under the Public Policy Act and summary judgment was therefore proper.

8 EIR Cases at 530. Significantly, in *Merryman*, the plaintiff was discharged by Williams, the individual to whom the complaint as to unsafe flying practices had been made and that discharge occurred only two days after a discussion between Williams and Merryman in which Merryman asserted that Williams was engaged unsafe flying practices. Despite a mere two (2) day lapse between the discussion between Merryman and Williams, the Court of Appeals sustained the trial court's grant of summary judgment.

Plaintiff, in the instant case, urges the Court to find that the "temporal proximity of the discharge of the protected activity" is sufficient circumstantial evidence to create a question of fact concerning an alleged connection between Ms. Pannell's report of possible insurance fraud to Mr. Miller (on September 3 and 8, 1992) and her discharge on September 25, 1992. This position is urged even though the incident leading to Ms. Pannell's report or intention to report to Mr. Miller occurred on August 7, 1992 and there is no proof that the discharging individual, Donnie Sowell, was ever aware of Ms. Pannell's report or intention to report to Mr. Miller. Moreover, it is undisputed that on September 25, 1992 there was a verbal altercation in the office between Ms. Pannell and Ms. Brasch.[4]

In the instant case there is no proof that Donnie Sowell knew of Pannell's report to Miller regarding the alleged insurance fraud and it is undisputed that Donnie Sowell had a legitimate reason to discharge Ms. Pannell on September 25, 1992. The plaintiff cannot show "an exclusive causal relationship be-

tween plaintiff's refusal to participate in or to remain silent about illegal activities and the employer's termination of the employee." *Merryman v. Central Parking System, Inc.*, 8 IER Cases at 531.[5] Mere coincidence of time is insufficient to prove causation, especially in light of the fact that the plaintiff has no evidence that Donnie Sowell was ever aware of plaintiff's "whistleblowing" activity.

There being no dispute as to material facts, and the defendant being entitled to a judgment as a matter of law, the motion of defendant for summary judgment in this case is hereby GRANTED. IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that this cause be, and is hereby, DISMISSED with prejudice.

---

4. Plaintiff, in her memorandum, acknowledges that "it is true that the plaintiff has no evidence as to what occurred in that [meeting between Miller and Donnie Sowell on September 3, 1992]. Plaintiff's Answer to Defendant's Motion for Summary Judgment at page 10 (December 30, 1994).

5. In the instant case, plaintiff, confronted with a properly supported motion for summary judgment, also has been unable to show the second element under *Merryman*—the plaintiff's refusal to participate in, or to remain silent about illegal activities." 8 IER Cases 531. Pannell never "refused to participate in, or to remain silent" regarding an illegal or inappropriate activity.